1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOE FLORES, and M&G FARMS, INC.,** ) | **CIV F 07-334  AWI WMW** |
| ) | |
| **Plaintiffs,** ) | **ORDER ON DEFENDANTS'S** |
| **v.** ) | **MOTION TO COMPEL** |
| ) | **ARBITRATION AND** |
| **JEWELS MARKETING AND** ) | **REQUEST FOR A STAY** |
| **AGRIBUSINESS, et. al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

     This is a motion to compel arbitration brought by Defendants.[1]  Plaintiffs[2] filed suit in this

Court alleging 15 causes of action, including breach of contract and violations of RICO.

Plaintiffs resist the motion to compel and argue that the existence of the contract is at issue,

which requires a jury determination.  For the reasons that follow, the Court will grant the motion

to compel arbitration and stay this case.

---

[1]There are numerous Defendants in this action.  Plaintiffs allege that the Defendants all acted as each other's agents at all times and were part of the process of selling Plaintiffs's produce.  Plaintiffs do not challenge Defendants's assertion that those Defendants who are nonsignatories to the contract may nevertheless enforce the arbitration clause therein.  Accordingly, the Court will simply refer collectively to "the Defendants."

[2]Plaintiff Flores claims to be a partial successor in interest to Plaintiff M&G Farms.  There is no challenge that Flores lacks capacity or standing to bring this suit or resist arbitration.  Accordingly, the Court will refer collectively to "Plaintiffs" in this order.

## BACKGROUND

From the filings, on January 10, 2006, Defendants and Plaintiffs entered into a written Marketer-Grower Agreement ("the MGA") whereby Plaintiffs agreed to deliver a portion of their crops to Defendants from year to year until the agreement was terminated.[3]  Complaint at ¶ 25. The crop is identified by Exhibit A to the MGA as Navel Oranges.  See Chipchase Declaration Exhibit A; see also Complaint at ¶ 26.  Plaintiffs eventually delivered their Navel Oranges to Defendants, Defendants agreed to pay additional amounts to Plaintiffs, and a Release of Claims was executed by the Parties on March 31, 2006 ("the Release").  See Jones Declaration Exhibit D; cf. Complaint at ¶ 26.  Plaintiffs allege that the Release brought to conclusion the MGA.  See Complaint at ¶ 26.   On April 7, 2006, Rafael Macias on behalf of Plaintiffs signed a document ("the April Document") whereby Plaintiffs agreed to deliver 300 bins of W. Murcott Mandarins. See Chipchase Declaration Exhibit A; Macias Declaration Exhibit 2.  Plaintiffs allege that the April Document represents "yet another written agreement."  See Complaint at ¶ 27.  Plaintiffs allege that, in consideration of the written agreement to provide 300 bins of W. Murcott Mandarins, Defendants agreed to and did advance Plaintiffs $10,000.  See id.  Plaintiffs also allege that Defendants verbally agreed that Defendants would harvest, pack, store, sell and ship Plaintiffs's crop as a licensed farm labor contractor, a licensed merchant broker, and bailee.  See id.  After the final harvest of the W. Murcott Mandarins by Defendants, Plaintiffs verbally agreed to allow Defendants to harvest, pack, store, sell and ship Plaintiff's Valencia Oranges; Defendants purportedly harvested 166 bins of Valencia Oranges.  See id.  Plaintiffs allege that they have only received the advanced $10,000 and have received no other payments.  See id. at ¶ 28.  Plaintiffs allege that Defendants refuse to give Plaintiffs an accounting because Defendants took actual title of Plaintiffs crops from harvest to final sale, instead of merely taking possession. See id. at ¶ 29.

Plaintiffs brought suit in this Court and have alleged 15 causes of action: (1) breach of

---

[3]The MGA is expressly between M&G Farms (a plaintiff) and Crown Jewels (a defendant).

1  contract; (2) breach of the implied covenant of good faith and fair dealing; (3) mutual and open

2  account; (4) money had and received; (5) goods sold and delivered; (6) civil conspiracy; (7)

3  conversion; (8) failure to account and to exercise due care; (9) breach of fiduciary duty; (10) civil

4  RICO; (11) imposition of equitable lien; (12) violation of PACA; (13) negligence per se; (14)

5  negligent misrepresentation and infliction of emotional distress; and (15) constructive trust.

6  Prior to the filing of this suit, Defendants instituted an arbitration proceeding. Plaintiffs refused

7  to participate. Defendants now move to compel arbitration and for a stay. The arbitration

8  proceeding is currently in abeyance pending action by this Court.

9

10  **MOTION TO COMPEL ARBITRATION**

11  *Defendants's Argument*

12      Defendants argue that the MGA contains a broad arbitration clause. On March 31, 2006,

13  a release of claims was executed by Plaintiffs and Defendants, but the Release related only to a

14  crop of Navel Oranges. The Release was simply a release of claims and did not purport, nor did

15  it in fact, terminate the January 10, 2006, MGA. On April 7, 2006, Rafael Macias, on behalf of

16  Plaintiffs, signed a document that was entitled "Exhibit A" and which committed Plaintiffs to

17  provide 300 bins of W. Murcott Mandarins. The April 7, 2006, document was an amendment to

18  the still existing January 10, 2006, MGA, and expressly states that it is an amendment. This

19  controversy relates to a crop of W. Murcott Mandarins and Valencia Oranges. These crops,

20  however, were provided to Defendants through and in accordance with the January 10, 2006,

21  MGA, as amended by the April Document. Since the MGA contains an arbitration clause, and

22  all 15 causes of action relate to and arise out of the MGA, arbitration and a stay is appropriate.

23  *Plaintiffs's Opposition*

24      Plaintiffs argue that there is a controversy whether "there is or was not a marketer grower

25  agreement by and between [Defendants] and [Plaintiffs]." Plaintiffs's Opposition at 6. Plaintiffs

26  argue that the MGA was terminated/eliminated by the Release. The Release states that it

27  represents the entire agreement and supersedes all other agreements. Since the MGA states that

28

3

Defendants may terminate the MGA, based on the language of the Release, the Release represents Defendants's termination of the MGA.  Since the Release terminated the MGA, the MGA no longer exists and the arbitration clause also no longer exists.  Also, the part of the April 7, 2006, agreement that states that it is an amendment to the existing MGA was handwritten in by Defendants <u>after</u> Macias signed the document.  Since there is at least a dispute regarding the existence of an arbitration agreement, and a party cannot be forced to arbitrate something that he has not agreed to arbitrate, a jury trial on the issue of the existence of an arbitration agreement is appropriate.  The motion to compel arbitration must be denied.

Alternatively, the arbitration clause should not be given effect because the MGA improperly waives statutory rights and remedies, and an arbitration clause that defeats the remedial purpose of a statute is unenforceable.  Paragraph 5 initially waives, "to the greatest extent permitted by law," provisions of PACA that are inconsistent with the MGA and also waives § 56273 of the California Food and Agriculture Code.  Jones Declaration Exhibit A at ¶ 5.  Plaintiffs then identify Paragraph 5(j), whereby the Plaintiffs agree to bear all market risks and risks of loss to the crops until a sale has been effected, and Defendants bearing no such risks.  <u>See</u> <u>id.</u> at ¶ 5(j).  Plaintiffs finally identify Paragraph 5(l), which limits the type of damages available to Plaintiffs.  <u>See</u> <u>id.</u> at ¶ 5(l).

Alternatively, if the MGA is not considered to be a void written agreement, then the MGA requires that any modifications to it be made in writing and executed by each party.  The April Document, however, is signed only by Rafael Macias and is not signed by Defendants.  Since the April Document is signed by only one party, it is not a valid amendment to the MGA.

*Provisions of the MGA*

The MGA provides in part:

1.   <u>Grower's Obligation</u>: Grower agrees to deliver to Crown Jewels from year-to-year until this agreement is terminated, a portion of the Grower's crop.

. . . . . . .

3.   <u>Term and Termination</u>
     (a)   This agreement shall be effective from the date hereof and renew automatically for the following year unless written notice is given to

4

Crown Jewels.  Crown Jewels may terminate this contract at the end of the season.

. . . . . . .

7.   <u>Miscellaneous:</u>

. . . . . . .

(d)   This agreement sets forth the entire agreement of the parties hereto concerning the subject matter of this agreement and any and all prior agreement, whether oral or written, are suspended by this agreement.  This agreement may be modified by an amendment in writing executed by each of the parties hereto.

. . . . . .

10.   Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, including the Emergency Interim Relief Procedures, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  The place of arbitration shall be Fresno, California.  In any such arbitration the prevailing party shall be awarded its reasonable attorney's fees and costs.

R. Jones Declaration Exhibit A; Macias Declaration at ¶ 7.

<u>*March 31, 2006 Release*</u>

The Release is entitled "Mutual Release of Claims" and in relevant part reads:

A.   Jewel provided various financing and marketing services to Grower in connection with Grower's 2005-2006 crop (the "Marketing Services").

B.   Jewel has concluded its marketing of Grower's 2005-2006 crop and has provided Grower with a complete written accounting relating thereto which Grower has reviewed and approved.  Upon payment of the sum of $1,721.12, Jewel will have paid Grower all amounts owed to Grower by Jewel on accoutn of the 2005-2006 crop.

C.   Grower has repaid in full all outstanding advances made by Jewel to Grower and has paid in full all outstanding fees and commissions owed by Grower to Jewel on account of the marketing Services (the "Grower Advances and Fees").

D.   The Parties now desire to provide for the mutual release of any and all claims either Party may have against the other Party arising from or otherwise relating to the Marketing Services and/or the Grower Advances and Fees, pursuant to the terms and subject to the conditions set forth in this Agreement.

NOW THEREFORE, in consideration for the mutual covenants herein contained, the Parties agree as follows:

1.   <u>Mutual Release</u>.  The Parties, for and on behalf of their directors, officers, successors, agents, [etc.] . . . hereby release, acquit and forever discharge the other Party, and its directors, officers, successors, agents, [etc.] . . . from and against any and all claims, actions, causes of action of any nature and for all liabilities and obligations of every kind and character now existing, or arising in the future,

5

arising from or relating to the Marketing Services and or the Grower Advances and Fees, including, without exception, those claims relating to the growing, packing, storing, shipping, and marketing of Grower's 2005-2006 crop.

. . . . . .

17.    Entire Agreement.  This Agreement states the entire agreement among the Parties in relation to the matters contained herein and supersedes any prior agreements, negotiations or understandings.  Each of the Parties acknowledges and agrees that no other . . . made any promises, representation or warranty . . . not set forth in this Agreement.  Each Party acknowledges that such Party has not executed this Agreement on reliance on any promise, representation, conduct or warranty of any other Party not expressly set forth in this Agreement.

R. Jones Declaration Exhibit B.[4]

### The April Document

The April Document is entitled "Exhibit A . . . Description of Crops."  See Chipchase Declaration Exhibit A; Maciase Declaration Exhibit 2.  The April Document has a "description" section that is partially typed and partially hand written, which reads, "Approx. 300+ Bins of W. Murcotts located Rd. 120 & Dinuba, M&G Farms/[undecipherable] Raphael Macias."  Id. Immediately under this section is written in handwriting, "Amendment to Existing 2005-2006 Contract."[5]   See Chipchase Declaration Exhibit A.  Under this handwritten section are typed sections dealing with "Method of Accounting."   Id.; Maciase Declaration Exhibit 2.  The document is signed only by Rafael Macias.  Id.  The document is identical to the Exhibit A that is part of the MGA, except the Exhibit A of the MGA identifies the crops as "Navel Oranges" and does not have the additional handwritten section regarding "Amendment."  Cf. Chipchase Declaration Exhibit A with R. Jones Declaration Exhibit A.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), written agreements to arbitrate disputes

---

[4]The Release also contains an arbitration agreement at Paragraph 9.  See R. Jones Declaration Exhibit B.

[5]Again, Plaintiffs contend that this section was added after Macias signed and have produced an April Document without this handwritten portion.  See Macias Declaration Exhibit.  Except for the handwritten "amendment language," there is no dispute as to the contents of the April Document.  Cf. Chipchase Exhibit A with Macias Exhibit 2.

arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; <u>Circuit City Stores v. Adams</u>, 279 F.3d 889, 892 (9th Cir. 2002).  The FAA allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement."  9 U.S.C. § 4.  <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000).  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985); <u>Chiron</u>, 207 F.3d at 1130.  The FAA reflects a "liberal federal policy favoring arbitration agreements . . . [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  <u>Moses H. Cone Meml. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983).

However, "arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit."  <u>AT & T Technologies, Inc. v. Communications Workers</u>, 475 U.S. 643, 648 (1986); <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165, 1179 (9th Cir. 2004).  A contractual right to arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration."  <u>Britton v. Co-Op Banking Group</u>, 4 F.3d 742, 744 (9th Cir. 1993).  There are circumstances, such as under various agency and estoppel theories, in which nonsignatories to an arbitration agreement may compel arbitration against signatories or themselves be compelled to arbitrate by signatories.  <u>See</u> <u>Comer v. Micor, Inc.</u>, 436 F.3d 1098, 1101 (9th Cir. 2006); <u>M.S. Dealer Serv. Corp. v. Franklin</u>, 177 F.3d 942, 947 (11th Cir. 1999); <u>Britton</u>, 4 F.3d at 744-46; <u>Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC</u>, 2006 U.S. Dist. LEXIS 95007, *17-*20 (N.D. Cal. 2006).

"The court's role under the FAA is . . . limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at

issue.  If both questions are answered in the affirmative, the [FAA] requires the court to enforce

arbitration."  Chiron, 207 F.3d at 1130; see Lifescan, Inc. v. Premier Diabetic Servs., 363 F.3d

1010, 1012 (9th Cir. 2004).  The Ninth Circuit has recently explained:

> [W]hen the crux of the complaint challenges the validity or enforceability of the
> agreement containing the arbitration  provision, then the question of whether the
> agreement, as a whole, is unconscionable must be referred to the arbitrator.  When
> the crux of the complaint is not the invalidity of the contract as a whole, but rather
> the arbitration provision itself, then the federal courts must decide whether the
> arbitration provision is invalid and unenforceable under 9 U.S.C. § 2 of the FAA.

Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1263-64 (9th Cir. 2006)(en banc) (explaining

Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006)).  Further, when there is a

challenge to whether a contract containing an arbitration clause was ever formed or ever existed,

e.g. a contention that a purported contract is void as opposed to merely voidable, the court must

determine the existence of the contract.  See Three Valleys Mun. Water Dist. v. E.F. Hutton &

Co., 925 F.2d 1136, 1140-41 (9th Cir. 1991).  In other words, "Issues regarding the *validity* or

*enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but

challenges to the *existence* of a contract as a whole must be determined by the court prior to

ordering arbitration."  Sanford v. Memberworks, Inc., 483 F.3d 956, 962 & n.18 (9th Cir. 2007);

see Three Valleys, 925 F.2d at 1140-41.  When considering a motion to compel arbitration that is

"opposed on the ground that no agreement to arbitrate had been made by the parties, [the District

Court] should give to the opposing party the benefit of all reasonable doubts and inferences that

may arise."  Three Valleys, 925 F.2d at 1141 (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics

Co., 636 F.2d 51, 54 (3d Cir. 1980)).  However, "once it is found that a contract did exist at some

time, the questions of whether that contract has expired, or has been terminated or repudiated,

may well present arbitrable issues, depending on the language of the agreed-upon arbitration

clause."  Camping Constr. Co. v. District Council of Iron Workers, 915 F.2d 1333, 1340 (9th Cir.

1990).  That is, disputes whether a contract ever existed are issues for the court, but disputes

whether a contract has expired, has been terminated, or has been repudiated are issues for the

arbitrator, and not the courts, if the arbitration clause is sufficiently broad.  McKinney v. Emery

Air Freight Corp., 954 F.2d 590, 593 (9th Cir. 1992); Camping Constr., 915 F.2d at 1340;

Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 v. Interstate Distributor Co., 832 F.2d 507, 510 (9th Cir. 1987).  The presence of broad arbitration clauses generally require that disputes regarding termination of a contract be submitted to arbitration.  McKinney, 954 F.2d at 593; Camping Const., 915 F.2d at 1338-39; Brotherhood of Teamsters, 832 F.2d at 810.  However, arbitration clauses that are limited only to disputes about the "application of the agreement" do not empower an arbitrator to decide the factual question of whether an agreement has been terminated.  Southern Cal. Dist. Council of Laborers v. Berry Constr., Inc., 984 F.2d 340, 344 (9th Cir. 1993).

Federal substantive law governs the question of arbitrability.  Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999).  However, the federal policy favoring arbitration is inapplicable to the determination of whether a valid agreement to arbitrate between the parties exists and ordinary contract principles determine who is bound.  See Comer v. Micor, Inc., 436 F.3d 1098, 1104 n.11 (9th Cir. 2006).  In determining the validity of an agreement to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Adams, 279 F.3d at 892.  "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.  Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions."  Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686 (2000); Adams, 279 F.3d at 892; Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 936-37 (9th Cir. 2001).

To require arbitration, the "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability."  Simula, 175 F.3d at 721.  Arbitration agreements that use phrases such as "arising out of or relating to" or "arising in connection with" have broad arbitration clauses, whereas arbitration agreements that use only phrases such as "arising hereunder" without more, cover a much narrower scope of disputes.  See Pima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967); Simula, 175 F.3d at 721; Tracer Research Corp. v. National Envl. Srvs., 42 F.3d

1   1292, 1295 (9th Cir. 1994); <u>Mediterranean Enters., Inc. v. Ssangyong Corp.</u>, 708 F.2d 1458, 1364

2   (9th Cir. 1983).

3        Where a district court determines that a dispute is referable to arbitration under a written

4   agreement, the court "shall on application of one of the parties stay the trial of the action until

5   such arbitration has been had in accordance with the terms of the agreement, providing the

6   applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.  Thus,

7   the Arbitration Act "requires that the court stay judicial proceedings until the matter has been

8   arbitrated according to the terms of the arbitration agreement." <u>Leicht v. Bateman Eichler, Hill</u>

9   <u>Richards, Inc.</u>, 848 F.2d 130, 133 (9th Cir. 1988).

10

11                                          **DISCUSSION**

12        The motion to compel arbitration is based on Paragraph 10 of the MGA.  Paragraph 10 is

13   a broad arbitration clause since it covers, "Any controversy or claim arising out of or relating to

14   this contract, or the breach thereof . . . ." Cf. <u>Tracer Research.</u>, 42 F.3d at 1295.  Plaintiffs do not

15   dispute Defendants's contention that the non-signatory defendants can compel arbitration.

16   Plaintiffs also do not dispute Defendants's contention that the causes of action in the complaint

17   would otherwise "touch matters" covered by the arbitration clause.  Cf. <u>Simula</u>, 175 F.3d at 721.

18   Instead, the focus of Plaintiffs's opposition to arbitration is that there is no agreement to arbitrate

19   or that the April Document is not a valid amendment to the MGA.

20        With respect to Plaintiffs's contention that the arbitration clause is unenforceable because

21   the MGA waives certain statutory rights, the argument is not well developed.  Initially, there is

22   no infirmity identified with the arbitration clause itself.  Instead, Plaintiffs rely on waivers within

23   the MGA at Paragraph 5.  However, Plaintiffs cite no authority that indicates such waivers are

24   contrary to statutory rights or that such waivers otherwise void the MGA or render the arbitration

25   clause itself invalid or unenforceable.  Paragraph 5's waiver of PACA is expressly limited to the

26   extent allowed by law and thus, by its own terms, does not contravene PACA.  Also, Paragraph

27   5's waiver of California Food and Agriculture Code § 56273 complies with the waiver provision

28

10

of California Food and Agriculture Code § 56280.5.  See Cal. Food & Ag. Code § 56280.5 ("Any agreement waiving any right guaranteed by this chapter shall set forth in exact language the provision of this code being waived. . . .").   Additionally, although clauses that limit liability are strictly construed against the party relying upon them, generally commercial entities "are entitled to contract to limit the liability of one to the other, or otherwise to allocate the risk of doing business."  Phillipine Airlines, Inc. v. McDonnel Douglas Corp., 189 Cal.App.3d 234, 237 (1989).  Plaintiffs have failed to demonstrate how Paragraphs 5, 5(j), and 5(l) violate the law or how those Paragraphs render the arbitration clause invalid or unenforceable.[6]

        Plaintiffs primarily argue that the MGA and arbitration clause terminated upon the signing of the Release, and therefore, no longer exist.  The Court cannot agree that this argument is sufficient to deny Defendants's motion.  As noted above in the legal standard, the existence of a contract containing an arbitration clause or whether such a contract is void are matters for the Court and not the arbitrator.  See Sanford, 483 F.3d at 962 & n.18; Three Valleys, 925 F.2d at 1140-41.  However, questions whether a contract containing an arbitration clause has expired, terminated, or been repudiated are matters for the arbitrator if the arbitration clause is sufficiently broad.  See McKinney, 954 F.2d at 593; Camping Constr., 915 F.2d at 1340.  Here, it is true that the Release purports to be the entire agreement relating to the matters contained within it, as Plaintiffs point out.  Nevertheless, the release does not expressly terminate the MGA, expressly mention the MGA, or expressly state that it intends to terminate the MGA; instead it expressly releases claims relating to advances, fees, and marketing services.  See R. Jones Declaration Exhibit B.  Further, the MGA itself indicates that it renews at least for an additional year absent termination.  See R. Jones Declaration Exhibit A at ¶¶ 1, 3.  Nevertheless, the Court does not express an opinion on the ultimate effect of the Release because it would be improper to do so.  See McKinney, 954 F.2d at 593. Given the broad language of the arbitration clause, whether the MGA has terminated due to the Release is a question for the arbitrator and not for this Court.

---

[6]To the extent that Plaintiffs are challenging the validity or the enforceability of the MGA as a whole due to the waivers in Paragraph 5, such challenges are for the arbitrator to resolve and not for the Court.  See Nagrampa, 469 F.3d at 1263-64.

1   See McKinney, 954 F.2d at 593; Camping Constr., 915 F.2d at 1340.  The Release and its

2   possible termination of the MGA do not defeat Defendants's motion.

3        Next, there is a dispute between the parties with respect to the April Document,

4   specifically the handwritten portion that states, "Amendment to Existing 2005-2006 Contract."

5   Defendants contend that this was part of the document signed by Macias.  Plaintiffs contend that

6   it was added after Macias signed the agreement.  The Court understands Plaintiffs to argue that,

7   because the handwritten language was added without Macias's knowledge after Macias had

8   signed the document, there was no mutual assent to that term.  Because there was no mutual

9   assent to that term, that term cannot "revive" the MGA that had been previously terminated by

10  the Release.  However, irrespective of whether the handwritten language was present when

11  Macias signed the April Document or whether it was added after the fact, the handwritten

12  language does not change the rule that if an arbitration clause is sufficiently broad, issues

13  regarding expiration, termination, or repudiation of contracts containing arbitration clauses are

14  for the arbitrator.  McKinney, 954 F.2d at 590; Camping Constr., 915 F.2d at 1340.  The Court's

15  role is to determine whether an arbitration agreement exists and the handwritten language does

16  not affect the determination whether the MGA and Paragraph 10 exist.

17       Finally, Plaintiffs argue that if the Court finds that the MGA is not void then it should

18  consider the April Document to be an improper amendment to the MGA.  The MGA states in

19  pertinent part at Paragraph 7(d), "This agreement may be modified by an amendment in writing

20  executed by each of the parties hereto."  However, Paragraph 7(d) does not state that only written

21  amendments will be effective or that the MGA may be modified only by written agreements

22  signed by both parties.  Cf. Diamond Woodworks, Inc. v. Argonaut Ins. Co., 109 Cal.App.4th

23  1020, 1038 n.11 (2003) (contractual provision stated, "This contract may be altered or amended

24  only by written amendment signed by both parties."); Law Revision Commission Comments to

25  Cal. Civ. Code § 1698(c) ("The introductory clause of subdivision (c) recognizes that the parties

26  may prevent enforcement of executory oral modifications by providing in the written contract

27

28

12

that it may only be modified in writing.");[7] cf. also Release Paragraph 16 ("This Agreement may not be altered, amended or modified except by writing by duly authorized representatives of the Parties.").  By statute, parties to a written contract may modify that contract either in writing or orally to the extent that the oral agreement is executed by the parties. Cal. Civ. Code §§ 1698(a), (b).  There is no dispute that Plaintiffs signed the April Document at the behest of Defendants.  The April Document that Plaintiffs allege they signed is identical to Exhibit A of the MGA except the identity and quantity of the crop is changed, i.e. instead of 50 acres of Navel Oranges, the April Document identifies 300+ bins of W. Murcotts.[8]  There is no dispute that Plaintiffs provided a quantity of W. Murcott Mandarins to Defendants after April 7, 2006, and that Defendants accepted, marketed, and sold that citrus.  Since the contract does not prohibit modifications that are different from the form described in Paragraph 7(d), and because the citrus at issue was provided by Plaintiffs and accepted and sold by Defendants, that Defendants did not sign the April Document does not make the April Document an invalid amendment to the MGA.

In light of the above, the Court concludes that the MGA exists and that the arbitration clause is valid.  Since there is no dispute that all of the claims alleged by Plaintiffs touch matters covered by the broad arbitration clause, the Court must grant arbitration and stay these proceedings.  See 9 U.S.C. §§ 3, 4; Simula, 175 F.2d at 721; Leicht, 848 F.2d at 133.

## CONCLUSION

Defendants move to compel arbitration on the basis of Paragraph 10 of the MGA and

---

[7]California Civil Code § 1698 is entitled "Modification of a written contract" and reads in full:

(a) A contract in writing may be modified by a contract in writing.
(b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties.
(c) Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. The statute of frauds (Section 1624) is required to be satisfied if the contract as modified is within its provisions.
(d) Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel, oral novation and substitution of a new agreement, rescission of a written contract by an oral agreement, waiver of a provision of a written contract, or oral independent collateral contracts.

[8]For purposes of this issue, the Court excludes the handwritten "Amendment to the Existing 2005-2006 Contract."

argue that the MGA and Paragraph 10 are valid and exist, all causes of action touch matters governed by Paragraph 10, and all Defendants may compel arbitration.. Plaintiffs oppose the motion on the basis that the Release terminated the MGA, the MGA and/or the arbitration clause have waivers that contravene statutory rights, and the April Document is an improper amendment to the MGA.  However, there is no dispute that the MGA was signed and existed at some point. Because Plaintiffs rely on a termination of the MGA and the arbitration clause is sufficiently broad, whether the Release terminated the MGA is for the arbitrator.  With respect to the MGA's waivers, Plaintiffs have not shown that the arbitration clause itself is infirm, that the identified waivers are improper, or that the waivers make the MGA void.  Finally, the MGA does not expressly prohibit amendments that are not in writing and signed by both parties, and written contracts may be modified by oral agreements to the extent that the oral agreement is executed. The Court cannot conclude that the April Document is invalid for failure to comply with Paragraph 7(d) of the MGA.  Since Plaintiffs essentially only dispute the existence of the MGA and Paragraph 10, and the MGA and Paragraph 10 do exist, the Court is required to order arbitration and stay these proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1.      Defendants's motion to compel arbitration is GRANTED;

2.      Defendants's request for a stay of this case during arbitration is GRANTED;

3.      Plaintiffs are to participate in the arbitration begun by Defendants;

4.      This case is stayed during the pendency of the arbitration; and

5.      Upon completion of arbitration, the parties are to inform this Court forthwith, move to lift the stay, and file appropriate documents for the completion or continuation of this case.

IT IS SO ORDERED.

Dated:   July 6, 2007                      _____ /s/ Anthony W. Ishii _____
                                           UNITED STATES DISTRICT JUDGE