BAKER, MANOCK & JENSEN, PC
FIG GARDEN FINANCIAL CENTER
5260 NORTH PALM AVENUE, FOURTH FLOOR
FRESNO, CALIFORNIA 93704-2209
TELEPHONE (559) 432-5400
TELECOPIER (559) 432-5620

Attorneys for   Defendants JEWELS MARKETING AND AGRIBUSINESS, LLC, sued as a limited liability corporation and doing business as CROWN JEWELS MARKETING, et al.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M & G FARMS, INC.; et al.,<br><br>  Plaintiffs,<br><br>vs.<br><br>JEWELS MARKETING AND AGRIBUSINESS, LLC, et al.<br><br>  Defendants. | Case No. 1:07-CV-00334-AWI-DLB<br><br>DEFENDANT JEWELS MARKETING AND AGRIBUSINESS, LC'S BRIEF RE: EFFECT OF CALIFORNIA JUDGMENT LIEN STATUTES<br><br>Date:  February 22, 2010<br>Time:  1:30 p.m.<br>Place:  Courtroom 2 |

## I.

## INTRODUCTION

The court asked both parties to brief the issue of the effect of California judgement lien statutes, including but not limited to Cal. Code. Civ Pro. § 708.440 and §708.470, on all pending motions before the court, including the requested interpleader. It is Crown Jewels position that the lien statutes do not apply to this context as the separate settlement agreement between Crown Jewels and M&G did not involve Flores, and his assigned rights by M&G are irrelevant to this action. Even if the lien statutes apply, the legislative history behind the statutes show that this case does not violate the policy of the required consent. Equity would provide for the continued interpleader action, with subsequent consent if necessary, as the lien holder's rights are unaffected by Flores' claim in this settlement agreement.

## II.

## STATEMENT OF FACTS

On February 28, 2007, M&G filed an underlying civil action against Crown Jewels in Case No. 1:07-CV-00334-AWI-DLB, based upon claims arising from a Marketer-Grower Agreement entered into between Jewel Marketing and Agribusiness, LLC and M&G. Manock Decl., at ¶ 3.

On July 24, 2009, the parties engaged in the first session of what became a two-day mediation before Mediator Douglas E. Noll, of Noll Associates. At the conclusion of the first day of mediation, the parties agreed that mediation would continue on October 21, 2009, without the presence of Mr. Joe Flores ("Flores"), one of the plaintiffs in the underlying dispute. Manock Decl., at ¶ 4.

On October 21, 2009, the parties reached a settlement of the underlying dispute. A written Settlement Agreement was eventually signed by Rafael Macias on behalf of M&G, Flores, and counsel for Crown Jewels. Manock Decl., at ¶ 5.

Pursuant to the terms of the Settlement Agreement, Crown Jewels agreed to pay to M&G the sum of forty-one thousand dollars ($41,000.00). The amount was to be made payable to M&G and its attorney Henry D. Nunez in ten (10) days. In consideration of receipt of payment, the parties agreed to dismiss the claims and the case with prejudice, each party to bear their own attorney's fees and costs. Mr. Flores was to receive nothing from Crown Jewels under the terms of the Settlement Agreement. Manock Decl., at ¶ 6.

On October 29, 2009, counsel for claimants Mirabella and Philippe and Paquerette Markarian contacted counsel for Crown Jewels and demanded that these claimants had a claim of right to the settlement proceeds based upon a recorded judgment lien against Mr. Flores dated May 31, 2008. The Notice of Lien was filed in the District Court for the Eastern District of California. The lien was filed pursuant to CCP § 708.410 to be attached upon any settlement or judgment rendered in favor of Flores, in the total amount of $49,537.86 plus interest. Manock Decl., at ¶ 7.

///

On November 6, 2009, Henry D. Nunez, counsel for M&G, sent a letter via U.S. mail to Crown Jewels' counsel demanding that payment of the settlement proceeds be made within 10 days to M&G Farms and Henry D. Nunez. Manock Decl., at ¶ 8.

On November 7, 2009, Mr. Flores prepared and delivered via facsimile a letter stating that the lien filed by Horowitt was of no significance pursuant to the Settlement Agreement. Manock Decl., at ¶ 9.

On November 12, 2009, Mr. Flores filed a request for dismissal without prejudice based upon the written Settlement Agreement. Manock Decl., at ¶ 13.

On November 13, 2009, Philip Norgaard of Coleman and Horowitt, LLP, prepared and delivered via telecopier and mail a letter to Flores addressing the recorded lien and the settlement agreement. Mr. Norgaard's letter addressed the road blocks Flores constructed by excluding himself from recovery under the Settlement Agreement, and the timing of the request for dismissal. Mr. Norgaard also reiterated his office's intention to file a motion to intervene to obtain injunctive relief prohibiting payment of the Settlement Agreement until the issue of enforceability of the judgment lien could be determined. Manock Decl., at ¶ 14.

On November 13, 2009, Crown Jewels' counsel prepared and delivered via facsimile and mail a letter to Flores and Mr. Nunez, which explained that Crown Jewels had been informed that M&G had paid money to Mr. Flores in exchange for his foregoing receipt of any funds from Crown Jewels under the Settlement Agreement. Manock Decl., at ¶ 15.

On November 16, 2009, this Court, entered an order closing the underlying civil case, indicating that it was giving effect to the Settlement Agreement entered into between Joe Flores, M&G and Defendant. The dismissal was with prejudice. Manock Decl., at ¶ 16.

### III.

### ARGUMENT

The California judgment lien statutes do not affect the enforceable settlement agreement between M&G and Crown Jewels. A judgment creditor's lien against a judgment debtor who is a party to a pending action or proceeding is governed by Code of Civil Procedure Sections 708.410-708.480, collectively "Article 5." Pursuant to Article 5, a judgment creditor may place a

lien on the rights of the judgment debtor to receive money, property or both by way of a settlement or judgment entered in that action. CCP § 708.410(a); *Oldham v. California Capital Fund, Inc.*, 109 Cal.App.4th 421, 429 (2003). Section 708.440 provides that a pending action by the judgment debtor cannot be dismissed or settled without written consent of the judgment creditor or court order. Subdivision (b) of that statute allows a judgment debtor to apply for approval of a settlement or dismissal, and authorizes the court to "include such terms and conditions as the court deems necessary."

Section 708.470 provides that if a judgment debtor is entitled to money or property under a judgment in an action, and there is a lien under Article 5, upon application of any party, the court may order the judgment debtor's rights to money or property be applied to satisfy the lien. (§ 708.470, subd. (a).)

The statute provides required written consent however, this provision is not applicable to the case at hand as: 1) the settlement was a separate agreement exclusively with M&G; 2) the policy behind the statute precludes collusion which is not at issue here; and 3) both parties support the enforcement of the valid settlement agreement, under principles of equity even if written consent is required, the court should allow subsequent consent and uphold the agreement.

### A. Written Consent is Not Necessary in Order to Continue with the Interpleader Action as the Statute Applies to Judgments.

The California judgment lien statutes apply only to the rights to funds pursuant to a judgment, not a settlement agreement. "These judgment lien statutes are subject to strict construction." *Casa Eva Homeowners Assn. V. Ani Construction & Tile Co.* 134 Cal. App.4th 771, 780 (2005). Ca. Code. Civ. Proc., § 708.440 and § 708.440 specifically discuss judgments. Moreover, *Casa Eva* pointed to § 708.470 and explained, "...there was no judgment in this case. The case was settled. Without a judgment... the trial court lacked jurisdiction to act under subdivisions (a) and (b) of 708.470.

Crown Jewels entered into a settlement agreement, which has not been reduced to a judgment. Here, there is a valid settlement agreement. Crown Jewels did not discover until after

the agreement that M&G secretly agreed to give Flores money as evidenced by correspondence between Mr. Manock and Mr. Nunez attached to the interpleader. The payment of monies to Flores was done without the knowledge or consent of Crown Jewels. See Manock Decl., at ¶ 15. In fact, during mediation and prior to the signing of the Settlement Agreement, Counsel for Crown jewels was told otherwise, that Flores was not going to receive a portion of the settlement agreement.

Subsequently Counsel became suspicious of Flores' undisclosed involvement and asked for assurances due to concern about the judgment lien and the desire to avoid potential litigation. At this point, M&G admitted to paying Flores. Manock Decl., at ¶ 15. As soon as Counsel was aware that Flores had secretly been paid money, Counsel complied with the statute and notified the judgment creditor of the settlement agreement. Now the only issue that remains is whether the Judgment Creditor is due and of the $41,000.00 or that amount paid to Flores by M&G. Given the uncertainty, Crown Jewels applied for an interpleader action to determine these issues.

At this stage, Defendant has merely requested an interpleader, there is no judgment in this case yet and therefore the lien statutes do not apply. The settlement agreement is valid and the proper distribution of the money should be submitted to the court to determine.

### B. Written Consent is Not Necessary For The Separate Agreement Between M&G and Crown Jewels.

Even if the lien statutes apply, it does not apply to this case as the settlement agreement between M&G and Crown Jewels constitutes a separate and distinct settlement. There are two parties and two claims at issue. This settlement agreement deals exclusively with the claims of M&G. Crown Jewels did not enter into this settlement agreement with Flores. The settlement agreement clearly states it is a settlement agreement between "Crown Jewels Marketing Inc. and M&G Farms Inc." Even though it mentions "including Joe Flores" he specifically dismissed himself from the agreement. Manock Decl., at ¶ 13. The sum of forty-one thousand dollars ($41,000.00), was to be made payable to M&G and its attorney Henry D. Nunez in ten (10)

days. Manock Decl., at ¶ 6. Mr. Flores was to receive nothing from Crown Jewels under the terms of the Settlement Agreement.

The complaint even specifies that Flores is "a partial successor assignee of the written and oral contract entered into on April 7, 2006 between M&G Farms, Inc. (Assignor) and Defendant...Crown Jewels." Complaint ¶ 3. There is no dispute that Flores is merely an assignee of M&G. His claim is separate and distinct from the settlement agreement reached between M&G and Crown Jewels. The settlement agreement between M&G and Crown Jewels did not involve Flores with regard to the payment of any monies. As Flores voluntarily dismissed himself, this should not upset the valid settlement agreement between Crown Jewels and M&G.

### C. The Policy Behind the California Judgement Lien Statutes Does Not Preclude Enforcement of this Settlement Agreement.

In *Oldham*, the Court of Appeal discussed the legislative history behind the statute and explained the role of the court to prevent collusive evasion of a judgment creditor's lien. "One purpose of the lien is to establish and preserve the judgment creditor's priority to the money and property the judgment debtor may receive from the pending action. (Legis. Com. com., 17 West's Ann.Code Civ. Proc. (1987 ed.) foll. § 708.410, p. 467; *Oldham, supra*, 109 Cal.App.4th at p. 430.) This legislative purpose is best served if a lien obtained under Article 5 is an effective remedy for judgment creditors." (*Oldham, supra*, 109 Cal.App.4th at p. 430.) The Court emphasized the importance of preventing collusion, "To provide an effective remedy, we conclude Article 5 must be implemented to prevent the judgment debtor, with or without the active assistance of other parties to the settlement agreement, from structuring a settlement so it receives benefits while evading the lien of the judgment creditor, absent appropriate equitable considerations." (Id. at p. 430.)

The court in Oldham concluded "that the facts regarding whether a settlement was structured to evade the lien of the judgment creditor are material to the approval of a settlement under section 708.440.... To make an informed and intelligent decision about the settlement, the superior court should have sufficient information to understand who benefits from the transfers contemplated by the proposed settlement and how they are benefitted. In other words, the superior

DEFENDANT JEWELS MARKETING AND AGRIBUSINESS, LC'S BRIEF RE: EFFECT OF
CALIFORNIA JUDGMENT LIEN STATUTES

court must understand the size of the settlement pie, how the pie is sliced, and who is getting which slice. (See *Abatti v. Eldridge, supra*, 112 Cal.App.3d at p. 416 .)" (Id. at p. at p. 432.)

Here, the policy concerns regarding collusion are not at issue in this case. First, Crown Jewels has submitted the issue to the court through interpleader in order to clearly determine the proper distribution of funds from the settlement. The very fact that Crown Jewels asked the court to determine the proper distribution is evidence of the fact that collusion is not at issue here.

Second, Flores did not receive anything under the settlement agreement, therefore the lien holder's interests are not threatened with regard to his claim against Crown Jewels. Crown Jewels did not realize that M&G was privately giving Flores money until after the agreement. Manock Decl., at ¶ 15. The payment of any monies to Flores from M&G is a separate payment of money. The payment was done without the knowledge or consent of Crown Jewels, and is unrelated to the settlement agreement. Again, there are two claims and two parties at issue. The settlement agreement here, deals only with Crown Jewels and M&G, any payment to Flores was a separate deal, unknown by Crown Jewels and without effect on the validity of this agreement at hand.

### D.  Equity Requires the Enforcement of the Settlement Agreement.

Even if written consent is required in this case, this situation is perfectly suited to an interpleader action. The parties agree there is an enforceable Settlement Agreement. The <u>only</u> issue is whether the Judgment creditor is entitled to the Settlement proceeds in light of the payment to Flores. It would be inequitable to restart the entire process in order to obtain written consent from a lien holder who's interest are better suited to go forward with the interpleader action. Especially given the secretive and potentially fraudulent side agreements, the best result is still to interplead all funds involved. As no one is opposing the enforcement of the agreement and the strong public policy in favor of settlement agreements, the equitable solution in this case would be to continue the interpleader action and allow the court to determine the proper distribution of the money.

///

DEFENDANT JEWELS MARKETING AND AGRIBUSINESS, LC'S BRIEF RE: EFFECT OF
CALIFORNIA JUDGMENT LIEN STATUTES

# IV.
# CONCLUSION

For the foregoing reasons, defendant Crown Jewels respectfully requests the court to uphold the settlement agreement and continue to interplead necessary interested parties. Apparent fraudulent side transactions should not affect the outcome of this settlement agreement.

DATED: February 5, 2010.                 BAKER MANOCK & JENSEN, PC


                                         By  /S/ Charles K. Manock
                                         Charles K. Manock
                                         Attorneys for JEWELS MARKETING AND
                                         AGRIBUSINESS, LLC, sued as a limited liability
                                         corporation and doing business as CROWN JEWELS
                                         MARKETING, ET AL.


@PFDesktop\::ODMA/MHODMA/DMS;DMS;798833;1